IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF DELAWARE *ex rel*. RONALD SHERMAN, | : : : |
| Plaintiffs, | : : |
| v. | : C.A. No. 1:17-cv-00419-RGA |
| | : |
| CHRISTIANA CARE HEALTH SERVICES, INC., CHRISTIANA CARE HEALTH SYSTEM, CHRISTIANA HOSPITAL, and WILMINGTON HOSPITAL, | : **REDACTED** : **Public Version** : |
| Defendants | : Filed January 9, 2019 |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS RELATOR'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

**POST & SCHELL, P.C.**
Paul A. Logan (DE Id. # 3339)
222 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (215) 587-1000
plogan@postschell.com

John N. Joseph (*pro hac vice*)
Carolyn H. Kendall (*pro hac vice*)
Four Penn Center
1600 John F. Kennedy Blvd, 14th Floor
Philadelphia, PA 19103
jjoseph@postschell.com
ckendall@postschell.com

*Attorneys for Defendants Christiana Care Health Services, Inc., Christiana Care Health System, Christiana Hospital, and Wilmington Hospital*

Dated: January 3, 2019

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

I.    INTRODUCTION .............................................................................................1

II.   NATURE AND STAGE OF THE PROCEEDINGS ..........................................1

III.  SUMMARY OF THE ARGUMENT ................................................................2

IV.   STATEMENT OF FACTS ................................................................................3

V.    ARGUMENT ...................................................................................................9

      A.    Legal Standard For Motions To Dismiss Under Rule 12(b)(1) ..............9

      B.    The Court Lacks Subject Matter Jurisdiction Because Relator Lacks Standing
            To Bring This Action ...........................................................................11

            1.    Relator Released His Present *Qui Tam* Claims Against Defendants By
                  Executing the General Release ..................................................11

            2.    Under Federal Common Law, Relator's Pre-Filing General Release
                  Should Be Enforced Because Relator's Pre-Release Submission Of
                  The Compliance Disclosure Logs Satisfies The Underlying Fraud
                  Disclosure Incentives Of The FCA's *Qui Ta*m Provisions......................13

            3.    This Court Also Lacks Subject Matter Jurisdiction Over Relator's DE
                  FCA Claims Because Relator Has Not Complied With The DE
                  FCA'S  Procedural Requirements...........................................................18

VI.   CONCLUSION...................................................................................................20

i

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Alston v. Alexander*,
    49 A.3d 1192 (Del. 2012)(Table) ........................................................ 19

*Constitution Party of Pennsylvania v. Aichele*,
    757 F.3d 347 (3d Cir. 2014) ........................................................ 3, 10

*Deuly v. DynCorp Int'l, Inc.*,
    8 A.3d 1156 (Del. 2010) ........................................................ 13

*Flynn v. New York, N.H. & H.R. Co.*,
    283 U.S. 53 (1931)........................................................ 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)........................................................ 10

*McDermott, Inc. v. Amclyde*,
    511 U.S. 202 (1994)........................................................ 13

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) ........................................................ 3, 10, 11

*Pennwalt Corp. v. Plough, Inc.*,
    676 F.2d 77 (3d Cir. 1982) ........................................................ 13

*Primax Recoveries, Inc. v. Sevilla*,
    324 F.3d 544 (7th Cir. 2003) ........................................................ 10

*Seiden v. Kaneko*,
    No. 9861-VCS, 2017 Del. Ch. LEXIS 46 (Del. Ch. Mar. 22, 2017)................ 12,13, 17, 18-19

*Seven Invs., LLC v. AD Capital, LLC*,
    32 A.3d 391 (Del. Ch. 2011) ........................................................ 13

*Shaheen v. B.F. Goodrich Co.*,
    873 F.2d 105 (6th Cir. 1989) ........................................................ 13

*Town of Newton v. Rumery*,
    480 U.S. 386 (1987)........................................................ 13, 14

*United States ex rel. Bahrani v. Conagra, Inc.*,
    183 F. Supp. 2d 1272 (D. Colo. 2002)........................................................ 16-17

*United States ex rel. Calilung v. Ormat Industries*,
    No. 3:14-cv-00325, 2016 U.S. Dist. LEXIS 44711 (D. Nev. Mar. 30, 2016) ........................ 16

*United States ex rel. Charte v. Am. Tutor, Inc.*,
    No. 10-3318, 2018 U.S. Dist. LEXIS 70279 (D.N.J. Apr. 26, 2018)....................... 15

*United States ex rel. Class v. Bayada Home Health Care, Inc.*,
    No. 16-680, 2018 U.S. Dist. LEXIS 162692 (E.D. Pa. Sept. 24, 2018) ...................... 11, 14, 15

*United States ex rel. Dillion v. St. Elizabeth Med. Ctr.*,
    No. 2:15-cv-13, 2017 U.S. Dist. LEXIS 108645 (E.D. Ky. July 13, 2017) ........................ 16

*United States ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*,
96 F. Supp. 3d 504 (E.D. Pa. 2015) ................................................ 15

*United States ex rel. Hall v. Teledyne Wah Chang Albany*,
104 F.3d 230 (9th Cir. 1997) ............................................... *passim*

*United States ex rel. Ladas v. Exelis, Inc.*,
824 F.3d 16 (2d Cir. 2016) ..................................................... 15

*United States ex rel. Nowak v. Medtronic, Inc.*,
806 F. Supp. 2d 310 (D. Mass. 2011) ..................................... 12

*United States ex rel. Radcliffe v. Purdue Pharma L.P.*,
600 F.3d 319 (4th Cir. 2010) ............................ 11, 15, 16, 18

*United States ex rel. Ritchie v. Lockheed Martin Corp.*,
558 F.3d 1161 (10th Cir. 2009) ..................................... 14-15

*United States v. Mezzanatto*,
513 U.S. 196 (1995) ............................................................. 13

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) ......................................................... 10, 19

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ............................................................... 9

**STATUTES**

42 U.S.C. § 1320a-7 .............................................................. 18

42 U.S.C. § 1320a-7b(f) ........................................................... 1

31 U.S.C. §§ 3729 *et seq.* ....................................................... 1

**RULES**

42 C.F.R.  §§ 1001.1 *et seq.* ................................................ 1, 18

Fed. R. Civ. P. 12(b)(1) ...................................................... 1,3, 10

**OTHER AUTHORITIES**

6 Del. Code § 1203(b)(4) .....................................................2, 19

Health and Human Services, Office of Inspector General, *Corporate Integrity Agreements*,
*available at* https://oig.hhs.gov/compliance/corporate-integrity-agreements/index.asp (last visited
January 3, 2019)....................................................................4

Health and Human Services, Office of Inspector General, *Exclusion Authorities*, *available at*
https://oig.hhs.gov/exclusions/authorities.asp
(last visited January 3, 2019) ...............................................18

## I.   <u>INTRODUCTION</u>

Defendants Christiana Care Health Services, Inc. ("CCHS"), Christiana Care Health System, Christiana Hospital, and Wilmington Hospital (collectively, "Defendants"), by and through counsel, respectfully file this motion to dismiss the Complaint of Relator Ronald Sherman ("Relator") and this case under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.   The Relator has executed a release discharging all causes of action against the Defendants, which extinguishes his *qui tam* claims in this case.   The Relator's release is enforceable as a matter of law and does not violate public policy because the Relator himself, on behalf of CCHS, explicitly disclosed the allegations contained in his Complaint directly to the government via the Office of the Inspector General for the Department of Health and Human Services ("HHS-OIG"), the agency tasked with enforcing laws and investigating fraud relating to federal health care programs,[1] prior to executing the release.   Accordingly, this Court does not have subject matter jurisdiction because the Relator lacks constitutionally-required standing to bring this action.

## II.   <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

On April 12, 2017, Relator filed this action against CCHS pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and the Delaware False Claims and Reporting Act, 6 Del. Code § 1201 *et seq.* ("DE FCA"), alleging previously disclosed purported violations of the Anti-kickback Statute ("AKS") and the Stark Law.  D.I. 1. On June 25, 2018, the federal government declined to intervene in the Relator's previously

---

[1]  "Federal health care program" means "any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government."  42 U.S.C. § 1320a-7b(f).  This includes Medicaid. Health and Human Services, Office of Inspector General, *Exclusions FAQ*, *available at* https://oig.hhs.gov/faqs/exclusions-faq.asp (last visited January 3, 2019); *see also* 42 C.F.R.  §§ 1001.1 *et seq.* ("OIG Authorities").

disclosed allegations.  D.I. 7.  Without any notice of declination or intervention by the State of Delaware, as required by the DE FCA, *see* 6 Del. Code § 1203(b)(4), or any other filing by the State of Delaware, the case was unsealed on June 26, 2018.  D.I. 8.  Defendants waived service of the Complaint on September 25, 2018, D.I. 9, and on October 24, 2018, the Court granted Defendants until January 4, 2019 to answer or otherwise respond to Relator's Complaint.  On January 4, 2018, the Defendants filed the instant Motion to dismiss the Relator's Complaint.

## III.   <u>SUMMARY OF THE ARGUMENT</u>

The Court should dismiss this action because the Relator has released all of his claims against the Defendants, including those alleged in his Complaint, and therefore renders this Court without subject matter jurisdiction as the Relator lacks constitutionally-required standing to bring this case.  The release is enforceable as a matter of law and public policy because Congress' intent in enacting the FCA's *qui tam* provisions – incentivizing disclosure of fraud and abuse allegations to the government – has already been satisfied by Relator's pre-release  (and pre-filing) disclosure of the Complaint's fraud allegations directly to the HHS-OIG, the agency charged with investigating fraud against Medicare, Medicaid, and other government health care programs, giving the government ample notice and opportunity to investigate their merits. Notably, since this disclosure, the government was afforded a second opportunity to evaluate Relator's claims when Relator filed the instant Complaint; after eighteen months of investigation, the government again decided not to pursue these allegations and declined to intervene in this action.

Relator also lacks standing to bring his DE FCA claims because the State of Delaware has not declined to intervene in this case, which is an essential statutory prerequisite to Relator's authority to bring claims under the DE FCA in the State's name.  6 Del. Code § 1203(b)(4)

(relator "shall have the right to conduct the action" only if the Delaware Department of Justice receives a copy of the complaint and "[n]otif[ies] the court that it declines to take over the action"). A review of the docket in this case conclusively establishes that no such declination has been made or provided to the Court.

## IV.    STATEMENT OF FACTS

Relator previously was employed by CCHS as its Compliance Officer. *See generally* Ex. 1, Separation of Employment Agreement and General Release ("General Release").[2] When his employment was terminated in December 2014, Relator executed the General Release, which explicitly discharged

> CCHS, its parent, subsidiary and affiliated entities . . . of and from all legally waivable actions and causes of actions, suits, debts, claims and demands whatsoever in law or in equity, arising on or before the effective date of this Agreement, which he ever had, now has, or which his heirs, executors or administrators hereafter may have . . . .

General Release ¶ 1. The Relator, an experienced attorney, signed this General Release as part of his severance package, which included, *inter alia*, payment of his salary of 52 weeks after termination.

Prior to the General Release's execution and during the time when the Relator served as CCHS's Compliance Officer, CCHS was subject to a Corporate Integrity Agreement with HHS-

---

[2] As this is a motion to dismiss Relator's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), the Court may review extrinsic evidence demonstrating Relator's lack of standing and consequently this Court's lack of subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case"); *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (same). *See* Section V.A. *infra*.

OIG.[3]   *See* Ex. 2, Corporate Integrity Agreement Between the Office of Inspector General of the Department of Health and Human Services and Christiana Care Health System (the "CIA"). HHS-OIG is the federal entity charged with enforcing health care compliance laws and investigating their potential violation.  As part of this mandate, HHS-OIG enters into Corporate Integrity Agreements with health care entities "as part of the settlement of Federal health care program investigations," and uses them to impose compliance obligations with strict penalties for breaches, including exclusion from participation in government health care programs.  OIG, *Corporate Integrity Agreements*, *available at* https://oig.hhs.gov/compliance/corporate-integrity-agreements/index.asp (last visited January 3, 2019).   An entity operating under such an agreement faces intense and contemporaneous regulatory scrutiny.  Specifically, a party to a CIA must retain, at its own expense, a private Independent Review Organization to continuously monitor its compliance function and the implementation of its legally mandated compliance program.  Ex. 2, CIA Section III.E.  Under the terms of the CIA, CCHS was required to, and did, submit Annual Reports directly to HHS-OIG that included certain compliance disclosures, such as a log and factual description of outstanding compliance allegations that had been received by CCHS over the subject year.  *Id.* Section V.B. 14.  The purpose of this mandated disclosure is to provide HHS-OIG with contemporaneous access to all purported healthcare fraud allegations so that it can promptly investigate them, given that submitting party has already experienced compliance issues that warranted the imposition of the CIA in the first place.

---

[3] CCHS voluntarily entered the CIA as part of a negotiated settlement resolving potential claims under the FCA arising out of the government's allegations that CCHS violated the Stark Law and the Anti-kickback Statute ("AKS") by paying private neurologists inflated fees for EEG interpretation services in exchange for patient referrals.  In addition to entering the CIA, CCHS paid $3.3 million under the terms of the settlement agreement to resolve these allegations. Execution of the settlement was not "an admission of liability by CCHS" and "CCHS denie[d] that it has any liability or has engaged in any wrongful conduct."

CCHS's CIA took effect in February 2010 and remained in place for five years – until after Relator's employment was terminated in December 2014.  Thus, all of the conduct alleged in Relator's Complaint occurred during this period when the CIA was in place.  As part of its Corporate Integrity Obligations, CCHS was required to operate a Disclosure Program through which "issues or questions associated with CCHS's policies, conduct, practices, or procedures with respect to a Federal health care program believed to be a potential violation of criminal, civil, or administrative law" could be reported.  Ex. 2, CIA Section III.F.  CCHS also was required to keep a log of such disclosures of potential health care fraud and abuse relating to government health care programs.  *Id.*  As part of his duties as CCHS's Compliance Officer, Relator prepared and maintained this log.

As part of each required Annual Report to HHS-OIG, CCHS was required to, and did, submit a "summary of disclosures in the disclosure log required by Section III.F of [the CIA] that . . . involve allegations of conduct that may involve illegal remunerations or inappropriate referrals in violation of the Anti-Kickback Statute or Stark law."  *Id.* Section V.B.14. Accordingly, every year CCHS reported to HHS-OIG in writing purported allegations of Stark Law and AKS violations received by Compliance.  While employed as CCHS's Compliance Officer, Relator submitted this summary along with the rest of CCHS's mandated Annual Reports to OIG from 2011 through 2014.  Copies of these submitted disclosure logs are attached hereto as Exhibits 3 through 6.

Through these disclosure logs, CHS directly informed HHS-OIG of precisely the same allegations of purported Stark Law and AKS violations that Relator again raises in this case.  The following table quotes verbatim the Relator's annual compliance disclosures submitted to the

HHS-OIG on behalf of CCHS and cross-references them with his materially identical allegations in this case:







As the chart above demonstrates, the substance of Relator's current allegations were disclosed to HHS-OIG in detail.[4]  These disclosures were made directly to the government, at a

_____

[4] Importantly, the CIA required disclosure only of alleged purported AKS and Stark Law violations.  Inclusion of these items in the disclosure logs reflects only this and does not constitute an admission or agreement that the facts described constitute AKS or Stark Law violations, and they do not.

Relator explicitly agreed that these allegations did not amount to violations of law, as he personally certified each year as to CCHS's "compliance with all the requirements of [its] CIA." Ex. 7-10 (2011-2014 Certification Under Section V.C. of CCHS Corporate Integrity Agreement ¶ 1).  Had Relator then believed that these entries reflected actual AKS or Stark Law violations,

time when CCHS was under intense regulatory scrutiny regarding its compliance with the AKS and Stark Law, and were explicitly identified as potential AKS and Stark Law violations.  The government received each of these disclosures years before Relator filed his Complaint, and thus had ample opportunity to investigate.  After evaluating the substance of Relator's disclosures on behalf of CCHS, HHS-OIG did not to pursue any further action, which is consistent with the government's more recent formal decision to decline to intervene in the same claims alleged in this case.  D.I. 7.

Relator's employment with CCHS was terminated in December, 2014.  As part of his termination package, Relator executed a broad General Release, which released all claims against CCHS and the other Defendants.  *See* Ex. 1.  Now, years after he disclosed these same allegations to OIG on CCHS's behalf through the CIA Annual Report process, Relator seeks to resurrect explicitly released claims based on allegations that have already been disclosed to the government and now twice has declined to pursue.

## V.  <u>ARGUMENT</u>

### A.  LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."  *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990).  Constitutional standing requires the plaintiff to show injury in fact, which the Supreme Court has defined as "an invasion of a legally protected

---

he could not have truthfully certified to CCHS's compliance with the CIA, which obligated CCHS to investigate each reported allegation in the disclosure log and "ensure that proper follow-up is conducted."  Ex. 2 Section III.F.  Allowing violative arrangements to continue and failing to make any required repayments to federal health care programs would not constitute compliance with this obligation.  Thus, by Relator's own certifications to the government, these allegations do not constitute violations of law.

interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).  False Claims Act Relators have standing not because they have personally suffered an injury, but because they have, in effect, "a partial assignment of the Government's damages claim." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).

An enforceable release extinguishes any legally protected interest embraced by its terms. *See Flynn v. New York, N.H. & H.R. Co.*, 283 U.S. 53, 56 (1931).  Without a legally protected interest in the claim at issue, the plaintiff no longer has standing to sue, *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 549 (7th Cir. 2003) (assignee lacked standing to sue based on its release of claims against defendant), and the case must be dismissed.

"[B]ecause standing is a jurisdictional matter," *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (internal quotation marks omitted), a challenge to the plaintiff's standing is properly made under Fed. R. Civ. P. 12(b)(1), which directs a court to dismiss an action over which it lacks jurisdiction.  When reviewing a factual, rather than facial, attack on its jurisdiction – such as a challenge to plaintiff's standing – the court can consider facts outside of the pleadings.  *Constitution Party*, 757 F.3d at 358; *see also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case").  Unlike a Rule 12(b)(6) motion, in factual challenges to jurisdiction like Defendants', "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

*Mortensen*, 549 F.2d at 891.  "Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."  *Id.*

## B.   THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE RELATOR LACKS STANDING TO BRING THIS ACTION

As set forth more fully below, Relator executed an enforceable release of all his claims against Defendants, which includes the *qui tam* claims raised in his Complaint.  Although not all releases are enforceable against FCA *qui tam* claims, federal courts will enforce releases to "bar FCA claims if (1) the release can fairly be interpreted to encompass *qui tam* claims and (2) public policy does not otherwise outweigh enforcement of that release*." United States ex rel. Class v. Bayada Home Health Care, Inc.*, No. 16-680, 2018 U.S. Dist. LEXIS 162692, at *13 (E.D. Pa. Sept. 24, 2018) (discussing the position of federal courts to have considered the issue and citing cases).   Here, both requirements are satisfied.

### 1.   Relator Released His Present *Qui Tam* Claims Against Defendants By Executing The General Release

Courts routinely hold that general releases of "all" claims, like the language in Relator's General Release, include FCA and DE FCA *qui tam* actions.  *See, e.g.*, *Class*, 2018 U.S. Dist. LEXIS 162692, at *16,*18 (release of "[a]ny other claims under contract, quasi contract, claims of tort, wrongful discharge, emotional distress or other similar claims or any legal or equitable theory" "is expansive enough to include FCA claims"); *United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319, 326 (4th Cir. 2010) (FCA claims included in release of "actions or causes of action, suits, [or] claims . . . whatsoever, in law or equity, which, Employee . . . ever had, may now have or hereafter can, shall or may have against [defendant]"); *United States ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230, 232-34 (9th Cir. 1997) (FCA claims barred by release that covered "any other claims or complaints which could have been brought in

11

any other type of action of proceeding"); *United States ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 337 (D. Mass. 2011) (FCA claims included in release of "any and all claims of any kind, known or unknown that arose on or before the time [the relator] signed this agreement").

Under Delaware law, general releases like the one Relator executed are held to include all of the releasing party's claims, both those explicitly named and those not.  *Seiden v. Kane*ko, No. 9861-VCS, 2017 Del. Ch. LEXIS 46, at *8 (Del. Ch. Mar. 22, 2017) ("'Delaware courts recognize the validity of general releases,' and acknowledge that the standard language of such releases is 'intended to cover everything—what the parties presently have in mind, as well as what they do not have in mind.'" (quoting *Corp. Prop. Assocs. 6 v. Hallwood Grp.,* Inc., 817 A.2d 777, 779 (Del. 2003)).

Relator's General Release contains broad language materially identical to the release language held to include FCA claims in the cases cited above.  Specifically the General Release executed by Relator releases "all legally waivable actions and causes of actions, suits, debts, claims and demands whatsoever in law or in equity, arising on or before the effective date of [the General Release,]" December 29, 2014.  Ex. 1 p. 1.  Although Relator did not bring this action until 2017, all of the alleged violations predate his termination and the resultant execution of the General Release, as evidenced by the Compliance Disclosure Logs submitted to OIG from 2011-2014.  Exs. 3-6.   Accordingly, the Relator and CCHS explicitly identified and disclosed these potential claims to HHS-OIG long before Relator signed the General Release and plainly come within its ambit.  This should come to no surprise to Relator, who is an experienced compliance attorney.

12

2.     **Under Federal Common Law, Relator's Pre-Filing General Release Should Be Enforced Because Relator's Pre-Release Submission Of The Compliance Disclosure Logs Satisfies The Underlying Fraud Disclosure Incentives Of The FCA's *Qui Ta*m Provisions**

Courts consistently recognize the strong public policy favoring settlement of litigation. *See, e.g.*, *McDermott, Inc. v. Amclyde*, 511 U.S. 202, 215 (1994) (recognizing that "public policy wisely encourages settlements"); *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 80-81 (3d Cir. 1982) (recognizing "the strong judicial policy in favor of enforcing voluntary settlement agreements").[5]  This policy interest extends to settlements and releases waiving statutory causes of action, which are presumptively valid absent an express statutory prohibition.  *United States v. Mezzanatto*, 513 U.S. 196, 200-01 (1995) ("[A]bsent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties."); *see also Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989) ("Ordinarily, public policy does not prohibit an otherwise valid release from acting as a waiver of a federal statutory cause of action.  Accordingly, waivers of federal statutory rights have been upheld in numerous contexts." (citations omitted)).

The Supreme Court has recognized that an exception to this presumption of enforceability exists when "the interest in [the release's] enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement."  *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987).   The Court has instructed that the reviewing court undertaking this analysis must also "credit the significant public interests that such agreements

---

[5] The Delaware Supreme Court has similarly recognized that general releases serve as an "important tool for settling disputes" and their enforcement is favored.  *Seven Invs., LLC v. AD Capital, LLC*, 32 A.3d 391, 397 (Del. Ch. 2011).   "Delaware courts recognize the validity of general releases," *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010), and the general rule is that if a "claim falls within the plain language of [a] release, then the claim should be dismissed," *Seiden*, 2017 Del. Ch. Lexis 46, at  *8-9 (alteration in original) (internal quotations marks omitted).

can further."  *Id.*  As discussed below, no countervailing public policy outweighs the interest in enforcing Relator's release of his *qui tam* claims.

Courts have recognized that the public policy underlying the FCA's *qui tam* provisions is to incentivize people to disclose allegations of fraud against the government.   *See, e.g.*, *Hall*, 104 F.3d at 233 (noting the FCA's "public interest in having information brought forward that the government could not otherwise obtain"); *Class*, 2018 U.S. Dist. LEXIS 162692, at *20 (holding that the FCA's *qui tam* provisions "set up incentives to supplement government enforcement of the Act by encourag[ing] insiders privy to fraud on the government to blow the whistle on the crime" (internal quotation marks omitted) (alteration in original)).   When considering whether a release of *qui tam* claims should be enforced, courts balance the government's interest in disclosure of fraud against the strong and well established public policy favoring enforcement of releases and settling private litigation, discussed *supra*.  As the Eastern District of Pennsylvania recently noted in *Class*, courts "agree that where the government has knowledge of the claims *before* the relator files the *qui ta*m lawsuit, public policy weighs in favor of enforcing a pre-filing release of claims."  2018 U.S. Dist. LEXIS 162692, at *13 (citing cases).

In *Hall*, the touch-stone case, the Ninth Circuit enforced a relator's release of his *qui tam* claims where the government had been informed by both the defendant company and the relator of the fraud allegations before the release was executed.  104 F.3d at 231-32.  The court held the release was enforceable because when the government knows about the alleged fraud before the relator's complaint is filed, the *qui tam* provisions' "public interest in having information brought forward that the government could not otherwise obtain is not implicated."  *Id.* at 233.  The Tenth Circuit reached the same conclusion in *United States ex rel. Ritchie v. Lockheed*

14

*Martin Corp.*, 558 F.3d 1161 (10th Cir. 2009), where it enforced a release signed after the defendant had voluntarily disclosed relator's allegations to the government. *Id.* at 1170. The court explained that "[o]n policy grounds, then, conditioning the enforceability of releases of *qui tam* claims upon the prior disclosure of the fraud allegations to the government promotes the federal interest in uncovering fraud against the government" and "has the benefit of encouraging voluntary disclosure by government contractors." *Id. See also Radcliffe*, 600 F.3d at 333 (holding "when, as in this case, the government was aware, prior to the filing of the *qui tam* action, of the fraudulent conduct represented by the relator's allegations, the public interest has been served and the Release should be enforced").

Although the Third Circuit has not addressed this issue, certain of its district courts have adopted the framework created by *Hall* when deciding whether to enforce a release to bar later-filed *qui tam* actions. *See, e.g.*, *Class*, *supra*; *United States ex rel. Charte v. Am. Tutor, Inc.*, No. 10-3318, 2018 U.S. Dist. LEXIS 70279, at *9 (D.N.J. Apr. 26, 2018) (declining to enforce release executed after *qui tam* action was filed, citing *Hall*); *United States ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 516 (E.D. Pa. 2015) (relator's release was unenforceable under *Hall* because it was executed after the *qui tam* action was filed).[6]

A pre-release disclosure must comply with two requirements to permit the release's enforcement. First, it must be truthful and not misleading. *See, e.g., United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 24-25 (2d Cir. 2016) (refusing to enforce release where defendant's disclosure to the government contained an "affirmative misrepresentation" about the crux of relator's allegations because "[n]othing in [defendant's disclosure] indicated to the government

---

[6] The government also has endorsed the *Hall* framework, calling it "fundamentally sound." Ex. 11, Brief of Amicus Curiae United States, *United States ex rel. Radcliffe v. Purdue Pharma L.P.*, Nos. 09-1202, 09-1244 (4th Cir. 2009), D.I. 36, p. 15.

that there was any fraud or that anyone had alleged fraud").   Second, it must provide the government with "more than just notice of the facts involved" – it must state that fraud was alleged or actually occurred.   *United States ex rel. Calilung v. Ormat Industries*, No. 3:14-cv-00325, 2016 U.S. Dist. LEXIS 44711, at *31 (D. Nev. Mar. 30, 2016).   For example, in *Calilung*, the court held that public disclosure of certain facts about the defendant's non-compliance with the requirements of a federal grant program was insufficient to permit enforcement of relator's release.   The court explained:

> The primary question [regarding enforceability] is whether the Government was aware of the relator's *allegations* before the relator signed a release; otherwise, an insider privy to fraud would be discouraged from blowing the whistle when some, or all, of the facts underlying the fraud are publicly available, even though the Government might not connect the facts or have any suspicion that fraud has occurred. Such a result would contravene the central purpose of the *qui tam* provisions of the FCA to encourage insiders to blow the whistle.

*Id.* at *32; *see also United States ex rel. Dillion v. St. Elizabeth Med. Ctr.*, No. 2:15-cv-13, 2017 U.S. Dist. LEXIS 108645, at *10 (E.D. Ky. July 13, 2017) (declining to enforce release where defendant established only that the government had access to "raw data from which it could have inferred that [defendant] was upcoding for medically unnecessary procedures").

A release's enforceability turns on the content of the defendant's disclosure to the government, not on whether the government acted on the information.  *See, e.g.*, *Calilung*, 2016 U.S. Dist. LEXIS 44711, at *32 ("*Hall* does not require the Government to actively investigate the allegations of fraud; it must only be aware of allegations that could give it cause to initiate an investigation."); *Radcliffe*, 600 F.3d at 332 (enforceability turns on "whether the allegations of fraud were sufficiently disclosed to the government," not on the status of any government investigation); *Cf. United States ex rel. Bahrani v. Conagra, Inc.*, 183 F. Supp. 2d 1272, 1277 n.3

16

(D. Colo. 2002) (refusing to adopt a rule prohibiting "enforcement of a release against a *qui tam* claim under any circumstances unless the federal government completed an investigation into the relator's allegations before the relator executed the release").

Here, CCHS's direct disclosures to HHS-OIG through Relator's submission of the Compliance Disclosure Logs satisfy the requirements of *Hall* and its progeny. First, as the chart *supra* demonstrates, the Compliance Disclosure Logs explicitly informed the government agency tasked with investigating health care fraud (including Medicaid fraud) of the same fraud allegations that Relator again raises here. Relator's Complaint alleges no AKS or Stark Law violation that is not contained in the Compliance Disclosure Logs. Second, these disclosures sufficiently informed the government of the alleged fraud. Not only did the Relator's Compliance Disclosure Log submissions alert the government that potential AKS and Stark Law violations had been alleged, which is the Logs' function (*see* Ex. 2, CIA Section V.B.14), but they also contained the operative facts needed to evaluate each allegation, as well as sufficient information to prompt requests for additional information should the government have decided that further investigation was warranted. Third, the government was apprised of these allegations months – and, in most cases, *years* – before Relator signed the General Release. Thus, the government had sufficient knowledge of these allegations and ample time to investigate them. Moreover, these disclosures were made to the very entity tasked with investigating health care fraud, at a time when CCHS was already under HHS-OIG's microscope for potentially having AKS and Stark Law-related compliance failures that led to the CIA. Inclusion of these allegations in the Compliance Disclosure Logs is no quiet disclosure; it is an explicit red flag to a motivated enforcer who likely already viewed CCHS with suspicion. Given this context, it is notable that the government chose not to pursue these allegations both when it

received them in CCHS's Annual Reports pursuant to the CIA, a period when CCHS was under intense contemporaneous scrutiny from HHS-OIG, and again when it later received Relator's *qui tam* Complaint.

The public policy animating the FCA's *qui tam* provisions is simply not implicated by Relator's Complaint; Congress' goal of encouraging disclosure of alleged fraud to the government was met years before Relator filed his Complaint. Accordingly, the strong public policies in favor of enforcing private agreements and encouraging the settlement of litigation weigh heavily in favor of enforcing the General Release.[7]

### 3.     This Court Also Lacks Subject Matter Jurisdiction Over Relator's DE FCA Claims Because Relator Has Not Complied With The DE FCA'S Procedural Requirements

As demonstrated above, under federal common law Relator's General Release is enforceable with respect to *all* of Relator's claims.[8] However, this Court lacks subject matter

---

[7] The same analysis discussed in Section V.B.2 applies to Relator's DE FCA *qui tam* claims. In *United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319 (4th Cir. 2010), the Fourth Circuit enforced the relator's pre-filing general release dismissing the relator's alleged violations of the FCA and 15 state law false claims acts, including the DE FCA. In enforcing the release and dismissing the entire action with prejudice, including the alleged state false claims act claims, the court performed the same balancing analysis set forth above regarding the sufficiency of the government's awareness of relator's allegations. *Id.* at 329-33. As discussed *supra*, the disclosure in this case is more than sufficient as Relator's allegations were provided directly to HHS-OIG, the agency specifically tasked with policing fraud against government health care programs, including Medicaid. *See generally, e.g.*, 42 C.F.R. §§ 1001.1 *et seq.* ("OIG Authorities"); 42 U.S.C. § 1320a-7 (HHS-OIG exclusion enforcement authority); HHS-OIG, *Exclusion Authorities*, *available at* https://oig.hhs.gov/exclusions/authorities.asp (last visited January 3, 2019). Indeed, as Relator acknowledges in his Complaint, Medicaid "is a government health insurance program funded jointly by the federal and state governments," and it is alleged harm to this program on which Relator rests his DE FCA claims. Compl. ¶¶ 5, 6 ("The State of Delaware brings this action on behalf of the Delaware Medical Assistance Program ('Medicaid').")

[8] To the extent that the Court does not find the federal common law analysis *supra* applicable to Relator's DE FCA claims, Delaware law would govern whether Relator has effectively released those claims. The general rule under Delaware law is that if a "claim falls

18

jurisdiction over Relator's DE FCA claims for an additional independent reason:  Relator has failed to comply with the DE FCA's procedural requirements for private *qui tam* suits and therefore lacks standing to bring claims under that statute.

Relator brings his DE FCA claims on behalf of the State of Delaware, pursuant to the DE FCA.  As discussed *supra*, a *qui tam* relator only has standing by virtue of a partial assignment of the government's claims by statutory operation.  *Vt. Agency of Nat. Res*, 529 U.S. at 773.  Thus it is axiomatic that Relator must satisfy the DE FCA's requirements to be authorized to bring suit. Under the DE FCA, the relator "shall have the right to conduct the action" only if the Delaware Department of Justice receives a copy of the complaint and "[n]otif[ies] the court that it declines to take over the action."  6 Del. Code § 1203(b)(4).  This notification of declination must come before the seal period expires or 20 days from being notified that the seal has expired – both of which happened months ago.  A review of the docket and this Court's orders in this case conclusively demonstrates that the State of Delaware has not declined to intervene in this case, which is a jurisdictional perquisite for Relator's standing and, by extension, this Court's jurisdiction over his putative *qui tam* claim brought in the name of the State of Delaware.

---

within the plain language of [a] release, then the claim should be dismissed," *Seiden,* 2017 Del. Ch. Lexis 46, at *8-9 (alteration in original) (internal quotations marks omitted).   According to the Delaware Supreme Court, the only exceptions to this general rule are fraud, duress, coercion, or mutual mistake. *Alston v. Alexander*, 49 A.3d 1192 (Del. 2012) ( "[a] plaintiff may only set aside a clear and unambiguous release where there is fraud, duress, coercion, or mutual mistake" (internal quotation marks omitted); None of these exceptions is present here, where Relator, an attorney, freely executed the General Release as part of the consideration for his severance package.

## VI.    <u>CONCLUSION</u>

The Court should dismiss Relator's Complaint and this action with prejudice because Relator released his *qui tam* claims against all Defendants by executing the General Release, which is enforceable as a matter of public policy, and thus lacks standing to bring this action.

**POST & SCHELL, P.C.**

<u>/s/ Paul A. Logan</u>
Paul A. Logan (DE Id. # 3339)
222 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Telephone: (215) 587-1000
plogan@postschell.com

John N. Joseph (*pro hac vice*)
Carolyn H. Kendall (*pro hac vice*)
Four Penn Center
1600 John F. Kennedy Blvd, 14th Floor
Philadelphia, PA  19103
jjoseph@postschell.com
ckendall@postschell.com

*Attorneys for Defendants*

Dated: January 3, 2019